IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHANE EUGENE CARDEN, )<br>AIS # 270176, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JERRY GURLEY, M.D., and NURSE )<br>LeANNE CONKLING,[1] )<br>)<br>Defendants. ) | CASE NO. 2:25-CV-44-WKW<br>[WO] |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Shane Eugene Carden, who is proceeding *pro se*, filed this 42 U.S.C. § 1983 action against Dr. Gurley and Nurse Conkling (collectively, "Defendants"), alleging that the medical care he received while incarcerated at Coosa County Jail in Alabama was constitutionally inadequate.  Before the court is Defendants' motion for summary judgment, which is supported by a brief and an evidentiary submission. (Doc. # 31.)  Plaintiff did not file any response to the motion, despite a court order directing him to do so.  (Doc. # 32.)  Based upon consideration of the summary judgment record, the motion will be granted.  Alternatively, this action will be

---

[1] The complaint identifies Defendants as Dr. Gurley and Nurse Conkling.  The Clerk of Court will be instructed to amend the caption to accurately reflect their first and last names as indicated above.

dismissed with prejudice for Plaintiff's failure to prosecute and comply with a court order.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question). Personal jurisdiction and venue are not contested.

## III. STANDARDS OF REVIEW

### A. Summary Judgment

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant without a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R.

Civ. P. 56 advisory committee's note to 2010 amendment ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324.

In the Eleventh Circuit, a district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.* "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101–02.

B.  **Failure to Prosecute and Comply with a Court Order**

A district court "may dismiss a case under its inherent authority, which it possesses as a means of managing its own docket so as to achieve the orderly and

expeditious disposition of cases." *McNair v. Johnson*, 143 F.4th 1301, 1306–07 (11th Cir. 2025) (cleaned up). The authority of courts to impose sanctions for failure to comply with court orders and failure to prosecute is longstanding and acknowledged by Rule 41(b) of the Federal Rules of Civil Procedure. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (noting that "dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion").

A court's dismissal under its inherent authority "can be either with or without prejudice to refiling." *McNair*, 143 F.4th at 1306. Dismissal with prejudice as a sanction "is warranted only upon a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" *Mingo v. Sugar Cane Growers Co-Op of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989) (per curiam) (emphasis omitted) (quoting *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)); *accord McNair*, 143 F.4th at 1306.

## IV.  BACKGROUND

### A.  Procedural History

In January 2025, Plaintiff Shane Eugene Carden, representing himself as an inmate, filed a complaint against Jerry Gurley, M.D., and Nurse LeAnne Conkling using a standard complaint form. On May 22, 2025, a scheduling order was entered.

4

(Doc. # 19.)  The scheduling order required Plaintiff to provide expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) by October 22, 2025.  Plaintiff failed to provide any expert disclosures.  Defendant provided expert disclosures on November 20, 2025, in compliance with the scheduling order.  (Doc. # 29; Doc. # 31 (Ex. 5).)

On December 22, 2025, Defendants timely filed a motion for summary judgment, a supporting brief, and an evidentiary submission.  (Doc. # 31.)  On December 30, 2025, an Order was entered requiring Plaintiff to respond to Defendants' motion for summary judgment by January 30, 2026, with specific instructions.  (Doc. # 32.)  Plaintiff did not respond to Defendants' motion for summary judgment.  In the December 30 Order, Plaintiff was warned that his "failure to file a timely response in compliance with this order will, without further notice, result in dismissal for failure to prosecute and comply with an order of the court." (Doc. # 32 at 3.)

B.     **Summary of Summary Judgment Record**

Plaintiff was arrested on July 29, 2022, booked into the Coosa County Jail, and transferred to Bibb Correctional Facility on May 14, 2024.  Plaintiff sues Dr. Gurley and Nurse Conkling for allegedly inadequate medical care during his Coosa County incarceration from October 2023 through February 2024. (Doc. # 1 at 4–5.) Dr. Gurley, a physician, and Nurse Conkling, a licensed practical nurse, were

5

employed by QCHC, Inc., during the periods relevant to the complaint. QCHC, Inc. was under contract with Coosa County to provide health care services to inmates at its jail during Plaintiff's incarceration, (Doc. # 31, Ex. 3.) The timeline below outlines Plaintiff's medical treatment as detailed in the summary judgment record, beginning with his booking at the Coosa County Jail.[2]

| Date | Description |
| --- | --- |
| July 29, 2022 | Nurse Conkling performs an intake history and physical assessment on Carden, including obtaining acceptable vital signs and weight and completing a Columbia Suicide Severity Rating Scale (with negative results). |
| July 29, 2022 | Carden reports pain in his right collarbone, prior surgical history for hardware placement in his left arm, substance use, and a history of bipolar disorder; he denies current medication. |
| July 31, 2022 | Nurse Conkling receives an order for Carden's right collarbone to be x-rayed. |
| August 1, 2022 | Carden's right clavicle (collarbone) is x-rayed. |
| August 5, 2022 | Dr. Gurley reviews the radiology report for the x-ray performed on Carden's right clavicle, noting normal ossification and no acute fracture. |
| August 5, 2022 | Dr. Gurley reviews Carden's intake history and physical assessment, noting his weight and that it is within a healthy range. |
| October 14, 2022 | Nurse Conkling performs a second intake history and physical assessment on Carden, including vital signs, weight, and Columbia Suicide Severity Rating Scale. |
| December 19, 2022 | Carden submits a kiosk medical request reporting body aches. |
| December 22, 2022 | Nurse Conkling assesses Carden for fever, congestion, and cough; obtains vital signs; and administers an antihistamine for 3 days and 200mg ibuprofen twice daily for 3 days. |
| March 16, 2023 | Carden submits a kiosk medical request stating he has a toothache. |
| March 20, 2023 | Nurse Conkling assesses Carden for dental pain for a broken tooth, with symptoms reported as ongoing for 1 month, and administers 200mg ibuprofen twice daily for 7 days. |

---

[2] The summary judgment record includes the declarations of Nurse Conkling, Dr. Gurley, and QCHC, Inc.'s owner, as well as Plaintiff's medical records. The summary judgment submission as a whole has been reviewed and considered.

| | |
|---|---|
| April 5, 2023 | Nurse Conkling assesses Carden again for ongoing dental pain, obtains vital signs, and administers 200mg ibuprofen twice daily for 7 days. |
| June 5, 2023 | Carden submits a kiosk medical request stating, "broke tooth." |
| June 8, 2023 | Nurse Conkling assesses Carden for chronic dental pain, obtains vital signs, and administers 200mg ibuprofen twice daily for 7 days. |
| June 22, 2023 | Carden submits a kiosk medical request stating, "my tooth is broke." |
| June 26, 2023 | Nurse Conkling assesses Carden for dental pain and administers ibuprofen 200mg twice daily for 7 days. |
| July 1, 2023 | Carden submits a medical request for wrist pain, reporting pain began several days prior due to punching another inmate. |
| July 3, 2023 | Carden submits a kiosk medical request for sleep issues. |
| July 5, 2023 | Nurse Conkling evaluates Carden for dental pain and also follows the musculoskeletal pain protocol to assess wrist pain, noting swelling in the wrist, and administers ibuprofen 200mg twice daily for 7 days. Nurse Conkling also assesses Carden for mental health issues, noting his history and recent altercations, and providing education on patient-specific needs, with potential for mental-health referral. |
| July 10, 2023 | Carden submits a kiosk medical request stating his left arm is still bothering him. |
| July 10, 2023 | Dr. Gurley sees Carden for a chronic care follow-up, notes mental health diagnoses (bipolar disorder and PTSD), obtains vital signs and weight, and writes orders for psychotropic medications. |
| July 12, 2023 | Carden is seen for his left arm pain and reports nerve pain from hardware placement. Nurse Conkling receives an oral order for Carden's left upper arm to be x-rayed and for him to receive ibuprofen 400mg twice daily for 7 days. Nurse Conkling advises Carden that the plan is for Carden's left arm to be x-rayed. Nurse Conkling also provides informed consent for psychotropic medications, which Carden signs. |
| July 13, 2023 | Radiology report for left humerus and left shoulder shows no acute fracture or dislocation, but old fracture, postoperative changes, and retained foreign material. |
| July 17, 2023 | Carden submits a kiosk medical request for ongoing arm pain. |
| July 19, 2023 | Responding to the July 17 request, Nurse Conkling informs Carden that he has been placed on the provider list for review of his x-ray. |
| July 20, 2023 | Carden submits a kiosk medical request stating, "I was suppose to have it took out before I came in cause it was all broke up." |
| July 23, 2023 | Dr. Gurley sees Carden in response to a kiosk medical request, assesses complaints of left arm pain, reviews medical history, and notes healthy weight. Dr. Gurley writes orders for Mobic, Prednisone, and possible nerve conduction studies. Dr. Gurley reviews the radiology report for the x-ray performed on Carden's left shoulder and humerus, noting no acute fracture but old injuries and hardware. |

| | |
|---|---|
| July 27, 2023 | Nurse Conkling responds to a kiosk medical request from July 20, 2023, and Carden is seen by the site physician. |
| July 28, 2023 | Dr. Gurley writes an order for Carden to be scheduled for a neurologist appointment and notes that a nerve conduction study may be part of the exam. |
| August 2, 2023 | Nurse Conkling notes that an appointment has been made for Carden with a neurologist in Alexander City, Alabama, for August 17, 2023. |
| August 3, 2023 | Nurse Conkling is informed that the neurologist is no longer accepting appointments for inmates, and the appointment is cancelled; she notifies her regional nurse manager and begins efforts to locate another physician. |
| August 4, 2023 | Carden submits a kiosk medical request regarding medication for his arm. |
| August 10, 2023 | Nurse Conkling responds to Carden's August 4 request and advises that medical staff are awaiting a neurology consultation appointment. |
| August 27, 2023 | Dr. Gurley provides an oral order for Carden to receive Mobic 15mg by mouth once daily for 90 days; Nurse Conkling receives the order. |
| September 20, 2023 | Nurse Conkling assesses Carden for heartburn and documents that he is to receive 2 antacid tablets by mouth twice daily for 3 days. |
| October 4, 2023 | Nurse Conkling receives an oral order for Carden to receive Cymbalta 30mg by mouth once daily for 30 days. |
| October 9, 2023 | Dr. Gurley reviews a prescription from Jackson Clinic Neurology for Nortriptyline 25mg once daily, prescribed by Dr. Rodney Soto. |
| October 18, 2023 | Nurse Conkling provides counseling and education to Carden on his medication non-compliance. |
| October 23, 2023 | Dr. Gurley writes an order to discontinue Mobic, Lexapro, and Risperdal because Carden elected to stop taking them. |
| November 10, 2023 | Carden receives a nerve conduction study at Jackson Clinic Neurology. |
| November 11, 2023 | Dr. Gurley provides an oral order for Carden to receive Cymbalta 30mg by mouth once daily for 90 days; Nurse Conkling receives the order. |
| December 1, 2023 | Dr. Gurley reviews the off-site consultation request form from Carden's nerve conduction study, noting Dr. Soto's recommendation for Nortriptyline 25mg once a day, with possible increase to 50mg for pain control. |
| December 7, 2023 | Dr. Gurley provides an oral order for Carden's prescription for Nortriptyline to be changed from 25mg once daily for 30 days to 50mg once daily for 30 days. |
| December 18, 2023 | Dr. Gurley sees Carden for a routine chronic care clinic follow-up; Carden reports stopping his mental health medications but continues Nortriptyline for arm pain; vital signs and weight are obtained. Dr. Gurley writes an order for Carden to receive Nortriptyline 50mg once |

|  | daily for 30 days and then Nortriptyline 25mg for 30 days and discontinues Cymbalta at Carden's request. |
|---|---|
| December 26, 2023 | Dr. Gurley reviews Carden's lab results drawn on December 18, 2023, as part of the chronic care clinic. |
| January 8, 2024 | Carden submits a kiosk medical request that his arm is still bothering him; Nurse Conkling responds that he is receiving medication in accordance with the neurologist's orders. |
| March 6, 2024 | Carden submits a medical kiosk request regarding arm pain and is put on the list to see Dr. Gurley. |
| March 10, 2024 | Carden is seen by Dr. Gurley for arm pain. |
| April 6, 2024 | Carden submits a medical kiosk request regarding his arm and medications. |
| April 11, 2024 | Carden is administered Tylenol 325mg twice daily for 3 days. |
| April 30, 2024 | Dr. Gurley provides an oral order for Carden's right hand to be x-rayed and prescribes ibuprofen 400mg twice daily for 4 days and an ice pack for pain. |
| May 1, 2024 | Dr. Gurley writes an order for an orthopedic appointment for Carden, which is scheduled for May 3, 2024. |
| May 3, 2024 | Carden has an orthopedic appointment. |
| May 5, 2024 | Dr. Gurley reviews the radiology report of the x-ray performed on Carden's right hand, noting a 3rd proximal phalanx fracture with mild displacement and swollen soft tissue. |
| May 12, 2024 | Dr. Gurley provides an oral order for Carden to receive Meloxicam 7.5mg by mouth daily for 14 days. |
| May 13, 2024 | Dr. Gurley writes an order for records to be obtained from the orthopedic appointment and for a follow-up appointment to be made. |
| May 14, 2024 | Carden is transferred from the Coosa County Jail to Bibb Correctional Facility; Dr. Gurley and Nurse Conkling have no further involvement with his medical care after this date. |

In addition to submitting Plaintiff's medical records, Defendants have provided expert testimony. The owner of QCHC, Inc., who is a medical doctor, asserts that the company's policies align with the standards set by the National Commission on Correctional Health Care (NCCHC) and that Dr. Gurley and Nurse Conkling adhered to these policies. He further asserts that no national industry

standard of care was breached in providing medical care to Plaintiff. (Doc. # 31, Ex. 3.)

## V. DISCUSSION

The discussion is divided into two parts. First, it addresses the reasons for granting the motion for summary judgment. Second, it analyzes the alternative basis for dismissing the action due to failure to prosecute and comply with a court order.

### A. <u>Defendants' Motion for Summary Judgment</u>

Plaintiff brings this suit under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

§ 1983. A § 1983 claim requires proof of two elements: (1) that the plaintiff was deprived of "rights, privileges or immunities" protected by the United States Constitution or federal laws; and (2) that the deprivation was caused "by a person acting under color of law." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (citation omitted); *Beaubrun v. Dodge State Prison*, 2025 WL 2490396, at *3 (11th Cir. Aug. 29, 2025) (per curiam).

Plaintiff brings his claims under the Eighth Amendment to the United States Constitution,[3] which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The complaint, liberally construed, alleges that Defendants exhibited deliberate indifference to Plaintiff's serious medical needs.[4]  (Doc. # 1 at 2.)

Because state governments have a "constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration," both the Eighth and Fourteenth Amendments forbid "deliberate indifference to a prisoner's serious medical needs." *Wingo v. WellStar Health Sys., Inc.*, 160 F.4th 1184, 1190 (11th Cir. 2025) (citations omitted) (Eighth Amendment

---

[3] It is unclear whether Plaintiff may have been a pretrial detainee for at least part of the period during which he alleges inadequate medical care.  The Fourteenth Amendment protects pretrial detainees from deliberate indifference to their serious medical needs. *See Jordan v. Doe*, 38 F.3d 1559, 1564–65 (11th Cir. 1994).  However, the legal standards for a deliberate-indifference claim under the Fourteenth Amendment are identical to those under the Eighth Amendment, allowing for their interchangeable application. *See Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)

[4] Three points are noted here.  First, Defendants have interpreted Plaintiff's complaint as containing both Eighth Amendment deliberate-indifference claims and state-law claims under the Alabama Medical Liability Act.  However, Plaintiff's claims are solely under 42 U.S.C. § 1983.  (*See* Doc. # 1 at 3 (listing the federal constitutional and statutory rights allegedly violated by state officials).)  Hence, this Memorandum Opinion and Order does not include an analysis under state law.  Second, Plaintiff references the Fourth Amendment in relation to his claim of inadequate medical treatment without explanation.  Deliberate-indifference claims, as asserted in the complaint, arise under the Eighth and Fourteenth Amendments, not the Fourth Amendment. *See supra* note 3.  Third, Plaintiff cites the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346; however, the FTCA's waiver of sovereign immunity is limited strictly to claims against the United States for injuries caused by federal employees and thus is inapplicable here. *See Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021).

claim); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (stating that "the standards under the Fourteenth Amendment are identical to those under the Eighth").

"To establish liability on a deliberate indifference claim, a plaintiff must demonstrate that: (1) the injured party suffered a deprivation that was objectively 'sufficiently serious,' and (2) the defendant acted with 'subjective recklessness as used in the criminal law.'" *Wingo*, 160 F.4th at 1190 (quoting *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc)). "To meet the second step, the plaintiff must show that the 'defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff.'" *Id.* at 1190–91 (quoting *Wade*, 106 F.4th at 1262).

Even if the summary judgment record created a genuine dispute of material fact regarding the first element—that Plaintiff experienced a deprivation that was objectively, sufficiently serious—the record does not create a genuine dispute of material fact on the second element. The undisputed summary judgment evidence, which includes unchallenged expert testimony, documents Dr. Gurley's and Nurse Conkling's treatment of Plaintiff. It shows regular medical assessments, medication administration, and continuing responses to medical requests. The provision of ongoing medical care to Plaintiff negates the showing needed to establish the subjective component of a deliberate-indifference claim. The summary judgment record lacks any evidence to suggest that Defendants were actually and subjectively

12

aware that their actions caused a substantial risk of serious harm to Plaintiff. On the contrary, the undisputed evidence demonstrates that Dr. Gurley's and Nurse Conkling's medical care provided to Plaintiff while incarcerated at the Coosa County Jail meets the standard required by the Constitution, as articulated by the Eleventh Circuit in *Wade*. Therefore, summary judgment will be entered in favor of Defendants on Plaintiff's deliberate-indifference claim.

**B.     Failure to Prosecute and Comply with a Court Order**

The December 30, 2025 Order cautioned Plaintiff that his "failure to file a timely response in compliance with this order will, without further notice, result in dismissal for failure to prosecute and comply with an order of the court." (Doc. # 32 at 3.) Plaintiff did not respond to Defendants' motion for summary judgment by the deadline and has not filed anything to date. Consequently, he has failed to prosecute this action and has not complied with the December 30 Order, despite its express directives and warning. Based on this record, the court finds a clear record of delay, given the extended period of noncompliance and the notice provided, and that no lesser sanction than dismissal with prejudice would be effective. *See Mingo v. Sugar Cane Growers Co-Op of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989) (per curiam); *McNair v. Johnson*, 143 F.4th 1301, 1306 (11th Cir. 2025) Consequently, this action alternatively will be dismissed with prejudice for failure to prosecute and comply with a court order.

## VI.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1) The Clerk of Court is DIRECTED to amend the caption to include Defendants' first and last names as follows:  Jerry Gurley, M.D., and Nurse LeAnne Conkling;

(2) Defendants' motion for summary judgment (Doc. # 31) is GRANTED as to Plaintiff's claims for deliberate indifference to his serious medical needs; and

(3) Alternatively, this action is DISMISSED with prejudice for Plaintiff's failure to prosecute and comply with a court order.

Final judgment will be entered separately.

DONE this 26th day of February, 2026.

                                                          /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE